## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EILEEN PARLATO, | ) | 3:22-CV-1094 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF EAST HAVEN and EAST | ) | |
| HAVEN FIRE DEPARTMENT, | ) | August 14, 2023 |
| *Defendants*. | | |

## RULING AND ORDER ON MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

In this employment discrimination action, Plaintiff Eileen Parlato alleges that her former employer, the East Haven Fire Department ("the EHFD"), discriminated against her on the basis of her gender and retaliated against her on the basis of her complaints about gender discrimination, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, the Equal Protection Clause of the U.S. Constitution, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46A-60 *et seq.* Defendants, the EHFD and the Town of East Haven (the "Town"), have filed the present motion to dismiss the complaint on various grounds. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## I.      FACTUAL BACKGROUND

### A.   Plaintiff's Hiring by the EHFD

The complaint contains the following allegations, which are accepted as true for the purpose of this motion to the extent it is based on Federal Rule of Civil Procedure 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff, a lifelong resident of the Town, was employed by the EHFD for approximately twenty-nine years. Compl., ECF No. 1, ¶¶ 23, 45, 103. When first seeking employment by the EHFD in the early 1990s, Plaintiff scored well on a written

exam, but was ultimately ranked thirteenth on of the list of applicants. *Id.* ¶ 20.  After the first twelve applicants on the list were hired, the then-Chairman of the Board of Fire Commissioners, who had expressed his opinion that women should not be firefighters, planned to stall Plaintiff's hiring until the expiration of her written exam results. *Id.* ¶ 21.  This plan was thwarted after Plaintiff hired an attorney and published the then-Chairman's plan in a newspaper. *Id.* ¶¶ 22–23.  Ultimately, Plaintiff was hired as the EHFD's first female firefighter in November of 1993. *Id.* ¶ 23.

Plaintiff was a firefighter for twelve years. *Id.* ¶ 24.  In 2005, she scored well on a written exam and was hired as the EHFD's first female Battalion Chief. *Id.* ¶¶ 24–25.  During the seventeen years Plaintiff held that position, she supervised a crew, conducted employee and volunteer trainings, and maintained dispatch certifications, Emergency Medical Services Instructor certification, CPR Instructor certification, and Emergency Medical Technician Practical Examiner qualifications. *Id.* ¶ 27, 37–38.  Moreover, Plaintiff worked closely with then-Assistant Chief Chuck Licata, who sought her help on a number of tasks, including implementing an electronic patient care reporting system and increasing the EHFD's monthly funds by implementing training that allowed for more calls to be billable. *Id.* ¶¶ 40–43.

Meanwhile, a male firefighter identified in the complaint as the "Male Candidate" rose through the ranks at the EHFD. *Id.* ¶ 32.  He became a firefighter in 2005, and then he was promoted to a Battalion Chief position in 2020. *Id.*  Although a newly appointed Battalion Chief typically did not supervise the same crew on which he had just worked as a firefighter, the EHFD's Fire Chief, Matthew Marcarelli, assigned the Male Candidate to supervise the same crew on which he had just worked as a firefighter. *Id.* ¶ 34.  When the Male Candidate was promoted to the Battalion Chief position, Marcarelli told him that "he would make an excellent" Assistant Chief.

*Id.* ¶ 35.  Plaintiff, who had already been a Battalion Chief for fifteen years at that point, helped train the Male Candidate on how to perform his role as a Battalion Chief.  *Id.* ¶ 37.

        B.  <u>Plaintiff's Application to Assistant Chief Position</u>

In advance of his anticipated retirement as Assistant Chief, Licata expressed to Plaintiff that he believed her to be his "natural successor."  *Id.* ¶ 47.  In August of 2021, Licata formally announced his retirement, and the EHFD posted the Assistant Chief position.  *Id.* ¶ 47.  Plaintiff alleges, however, that Marcarelli drafted "a new job description" for the Assistant Chief position. *Id.* ¶ 48.  Specifically, the Assistant Chief job posting stated that an external candidate required ten years of supervisory experience, but that an internal candidate required only ten years with the EHFD, regardless of whether the candidate had any supervisory experience during that time.  *Id.* In addition, Marcarelli changed the format of the Assistant Chief hiring process by setting only an oral exam and eliminating the typical written exam requirement, despite that Plaintiff had historically performed well on written exams.  *Id.* ¶ 53.  Marcarelli also selected the individuals who would comprise the panel of interviewers for the oral exam.  *Id.* ¶ 54.

Many individuals, including the Male Candidate, Plaintiff, and several external candidates applied for the Assistant Chief position.  *Id.* ¶ 52.  Plaintiff took the oral exam and felt that she was able to respond to all the interviewers' questions "easily and comprehensively," even though she did not know any of the interviewers.  *Id.* ¶ 56.  After her exam, the Male Candidate entered Town Hall around the same time as Marcarelli.  *Id.* ¶ 57.  After the Male Candidate's interview, he and Marcarelli left Town Hall, arrived at the EHFD's headquarters at about the same time, and spent some time in Marcarelli's office with the door closed.  *Id.*  When Plaintiff and the Male Candidate met later that day, he told her that he "struggled to answer one of the questions on the oral exam," until one of the interviewers provided him with "additional information he needed to

properly answer it." *Id.* ¶¶ 58–59.  Plaintiff alleges that the Male Candidate also seemed to know the interviewers.  *Id.* ¶ 59.  The Male Candidate also later told Plaintiff that one of the interviewers asked him why he was "the better applicant" in light of the fact that he was competing against another applicant with fifteen years more of experience than he had (Plaintiff).  *Id.* ¶ 63.

The next round of the interview process required the applicants to appear before the Board of Fire Commissioners.  *See id.* ¶ 66.  Before that round, however, Plaintiff received a letter informing her that she would not proceed to that round.  *Id.* ¶ 60.  The letter stated:  "This decision was based on overall accomplishments as delineated in the r[é]sum[é], fire department leadership experience and performance in the interview process."  *Id.*  Plaintiff alleges that the Male Candidate was "stunned" to learn that Plaintiff would not advance to the next round and the stated reasons for that decision, particularly given that he reported he had been asked about his lack of experience relative to Plaintiff's significant experience.  *Id.* ¶¶ 61–63.  The Board of Fire Commissioners interviewed the Male Candidate and two external candidates and ultimately chose the Male Candidate.  *Id.* ¶ 68.  The Male Candidate was sworn in as the EHFD's next Assistant Chief in October of 2021.  *Id.*

C.  Plaintiff's Complaints of Discrimination and the EHFD's Retaliation

Plaintiff alleges that the EHFD is a "male-dominated environment," *id.* ¶ 69, and that only three out of fifty-two employees in the EHFD were women as of June 1, 2022, *id.* ¶ 31.  She alleges several instances when the EHFD's leadership exhibited discriminatory animus.  For example, Plaintiff heard Marcarelli use the C-word to refer to a female activist in the Town.  *Id.* ¶ 73.  In addition, when a male firefighter and a female firefighter committed "comparable infractions," the male firefighter's infraction was "handled informally" with Marcarelli, whereas the female

firefighter was required to appear before the Board of Fire Commissioners and the Town's labor attorney.  *Id.* ¶ 74.

In another instance, the EHFD refused to assign a partner to one transgender woman firefighter.  *Id.* ¶ 70.  Around July of 2021, Plaintiff informed the Male Candidate, at that time the union president, that EHFD's failure to assign a partner to that woman violated the union contract. *Id.* ¶ 71.  The Male Candidate responded: "The Chief doesn't agree with you and neither do I."  *Id.* Plaintiff alleges that, after this conversation, Marcarelli's "behavior toward [Plaintiff] morphed from friendly and conversational to downright cold."  *Id.* ¶ 72.

In November of 2021, Plaintiff's counsel sent the Town a letter alleging sex discrimination in the EHFD.  *Id.* ¶ 75.  Plaintiff alleges that, after she sent the letter, Marcarelli "no longer addressed [Plaintiff] unless it was absolutely essential."  *Id.* ¶ 76.  In addition, he began to exclude her from "key aspects of her job."  *Id.* ¶ 77.  For example, when one firefighter in Plaintiff's crew was feeling unwell, Plaintiff talked with him at the station and relieved him of duty, and, when Marcarelli called her asking what happened, Plaintiff told Marcarelli that she did not believe the firefighter was under the influence of any substances.  *Id.* ¶¶ 77–80.  Marcarelli, however, visited the station, asked the firefighter to submit to a drug test, and drove him home, all without notifying Plaintiff of his actions.  *Id.* ¶¶ 81–82.  In another example, Marcarelli approached one firefighter in Plaintiff's crew, asked him if he wanted to be transferred to another station, and, when the firefighter expressed interest, told him to submit the request via email, all without asking Plaintiff for her thoughts as he typically would have done.  *Id.* ¶¶ 83–84.

Plaintiff alleges that the Town took retaliatory action as well.  For example, an attorney for the Town, Dave Ryan, investigated how Plaintiff was paid for emergency medical training certification and recertification classes she ran with former-Assistant Chief Licata.  *Id.* ¶¶ 90, 92.

Although the students paid for these classes directly, Plaintiff and Licata held the classes in the Town's adult education building, with permission from the principal. *Id.* ¶ 91. Ryan questioned Licata and the Board of Education regarding how Licata and Plaintiff were paid for the classes, and the principal ultimately wrote a letter confirming that they were not paid by the Town. *Id.* ¶¶ 92–93. In addition, Plaintiff alleges that the Town took retaliatory action against her long-time significant other, JP Vasilko, who was an employee in another department in the Town and the grievance chairperson of his union. *Id.* ¶ 86. Specifically, Plaintiff alleges that Ryan publicly accused Vasilko of violating confidentiality rules during the process of negotiating his union's collective bargaining agreement. *Id.* ¶¶ 87–88. Ryan later privately admitted that Vasilko had not engaged in any such conduct. *Id.* ¶ 89.

### D. Plaintiff's Retirement

Plaintiff ultimately retired in June of 2022, although she alleges that the decision to retire was primarily motivated by a desire to preserve her favorable retirement benefits. *Id.* ¶ 103. Plaintiff alleges that, had she been promoted to the Assistant Chief position, she would have entered into an individual contract with the Town and would not have been compelled to retire when she did to preserve her retirement benefits. *Id.* ¶ 104.

### E. Procedural History

Plaintiff, represented by counsel, filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"). *Id.* ¶ 14. Those agencies released jurisdiction in July of 2022. *Id.* ¶ 16. Further details concerning the administrative processes are set forth below as relevant.

Thereafter, Plaintiff, represented by the same counsel, initiated the present action. She brings the following claims against the Town and the EHFD: sex discrimination in violation of

Title VII for failure to promote (Count One), *id.* ¶ 107; sex discrimination in violation of the CFEPA for failure to promote (Count Two), *id.* ¶ 111; sex discrimination in violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983, for failure to promote (Count Three), *id.* ¶ 119; retaliation in violation of Title VII (Count Four), *id.* ¶ 125; and retaliation in violation of the CFEPA (Count Five), *id.* ¶ 128.

Defendants then filed the present motion to dismiss the complaint on various grounds. ECF No. 14. The Town contends that all claims against it should be dismissed because only the EHFD, not the Town, was named in Plaintiff's EEOC and CHRO complaints, and thus her claims against the Town are not exhausted. As explained below, the Court converted Defendants' motion into one for summary judgment on this issue. Separately, the EHFD contends that all claims against it should be dismissed because it is a municipal department and thus has no capacity to be sued. Finally, both Defendants contend that Plaintiff fails to state a plausible equal protection claim under § 1983, and that she fails to state plausible retaliation claims under Title VII and the CFEPA.

## II.    SUMMARY JUDGMENT ON ADMINISTRATIVE EXHAUSTION

The Town moved to dismiss Counts One, Two, Four, and Five of the complaint, which together assert gender discrimination and retaliation in violation of Title VII and the CFEPA, on the ground that Plaintiff failed to administratively exhaust those claims. In response, Plaintiff submitted certain factual information relevant to her exhaustion of administrative remedies. This information was not attached to or incorporated into the complaint, nor can it reasonably be construed as "integral" to the complaint; thus, it is not properly considered in resolving a motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153–54 (2d Cir. 2002). Accordingly, the Court informed the parties of its intent to convert the Town's motion to dismiss into a motion for summary judgment with respect to the issue of Plaintiff's exhaustion of

administrative remedies pursuant to Federal Rules of Civil Procedure 12(d) and 56.  ECF No. 53; *see also* Tr. of Oral Arg., ECF No. 55, at 5:2–4, 27:19–20.  Thereafter, the parties had an opportunity to submit supplemental briefing.  ECF Nos. 56, 59.

For the reasons described below, the Court finds that the undisputed facts presented to the Court demonstrate that Plaintiff's administrative complaint against the EHFD adequately exhausted her claims against the Town.  Accordingly, the Court denies the Town's motion for summary judgment on this ground.

### A.  Additional Factual Background

The parties submitted the following additional factual information relevant to Plaintiff's exhaustion of administrative remedies, which is undisputed except when noted.[1]  In November of 2021, after the Male Candidate was promoted to the Assistant Chief position but before Plaintiff retired, Plaintiff's counsel, Nina Pirrotti from Garrison, Levin-Epstein, Fitzgerald & Pirrotti, P.C., sent a letter to the Town on Plaintiff's behalf alleging sex discrimination in the EHFD.  Defs.' Local Rule ("L.R.") 56(a)1 Statement ("St."), ECF No. 58, ¶¶ 1–2; Pirrotti Aff., ECF No. 26-1, ¶¶ 3–4; Ex. 1 to Pirrotti Aff., ECF No. 26-1 at 8; *see also* Compl. ¶ 75.  The letter was addressed to the Board of Fire Commissioners and Michael Luzzi, the Town Attorney.  Ex. 1 to Pirrotti Aff., ECF No. 26-1 at 8; *see also* Ryan Aff., ECF No. 16 ¶ 6.  Pirrotti attests that, after sending this letter, Ryan—the lawyer for the Town who had previously investigated Plaintiff's significant other—began corresponding with her, and that at all times he "held himself out as the legal representative with authority to negotiate [Plaintiff's] claims against" the EHFD.  Pirrotti Aff.

---

[1] The Town's supplemental brief attaches a Local Rule 56(a)1 Statement, but Plaintiff's supplemental brief explains that she did not file a responsive Local Rule 56(a)2 Statement because she contends that the Town's Local Rule 56(a)1 Statement was not permitted.  ECF No. 59 at 2 n.1.  The Court acknowledges that its order regarding the supplemental briefing was ambiguous regarding whether the parties could have, or should have, filed Local Rule 56(a) statements, and therefore the Court will not address the propriety of the Town's filing.  *See* ECF No. 53.  Where the Town's Local Rule 56(a)1 Statement cites Plaintiff's counsel's affidavit to support a fact, the Court will consider the fact undisputed for the purpose of the present motion.

¶¶ 6–7.  For its part, the Town represents that Ryan never explicitly "communicated to" Pirrotti that he represented the EHFD.  Defs.' L.R. 56(a)1 St. ¶ 6.

Plaintiff and the Town agreed to attempt private mediation before she filed her administrative complaints with the EEOC and CHRO.  *Id.* ¶ 4; Pirrotti Aff. ¶ 8.  Around February of 2022, the parties entered into a mediation agreement setting forth the timing and procedure of the parties' attempt to mediate the dispute.  Pirrotti Aff. ¶ 15; Ex. 3 to Pirrotti Aff., ECF No. 26-1 at 31–33.  The agreement was entered between Plaintiff and "the Town," and it was signed by Ryan on behalf of the Town.  Ex. 3 to Pirrotti Aff., ECF No. 26-1 at 31–33.

To allow for sufficient time for the mediation, Plaintiff and the Town also entered into a tolling agreement.  Defs.' L.R. 56(a)1 St. ¶ 5; Pirrotti Aff. ¶ 9; Ex. 2 to Pirrotti Aff., ECF No. 26-1 at 16.  The tolling agreement attached a draft administrative complaint, which listed the respondent as the "Town of East Haven Fire Department" and alleged gender discrimination in violation of Title VII and the CFEPA.  Ex. 2 to Pirrotti Aff., ECF No. 26-1 at 16–29; Pirrotti Aff. ¶ 11.  The tolling agreement provided that Plaintiff's claims in that draft administrative complaint would be tolled until fourteen days after either party notified the other that they wished the tolling agreement to end.  Ex. 2 to Pirrotti Aff., ECF No. 26-1 at 16–29; Pirrotti Aff. ¶¶ 10–11.  The tolling agreement also provided that, if Plaintiff were to submit her administrative complaint to the EEOC and CHRO, the parties would "consent to the earliest release of jurisdiction permitted by the CHRO and EEOC."  Ex. 2 to Pirrotti Aff., ECF No. 26-1 at 17.  Like the mediation agreement, the tolling agreement was entered between Plaintiff and "the Town," and it was signed by Ryan on behalf of the Town.[2]  *Id.* at 16–17.

---

[2] Neither Plaintiff nor Pirrotti signed the version of the agreement submitted to the Court.

The mediation took place in May of 2022, and Ryan and Luzzi participated on behalf of the Town.  Pirrotti Aff. ¶¶ 21–22.  When the mediation was unsuccessful, Pirrotti notified Ryan that the tolling agreement would end, and that Plaintiff would submit her administrative complaint in fourteen days pursuant to the terms of the tolling agreement.  Defs.' L.R. 56(a)1 St. ¶ 7; Pirrotti Aff. ¶ 24.  Plaintiff's administrative complaint, like the draft one attached to the tolling agreement, listed the respondent as "Town of East Haven Fire Department."  Ex. 7 to Pirrotti Aff., ECF No. 26-1 at 48.

After Pirrotti filed the administrative complaint and informed Ryan via email, he accepted service.  Pirrotti Aff. ¶¶ 25–26; Ex. 5 to Pirrotti Aff., ECF No. 26-1 at 38–39; Ex. 6 to Pirrotti Aff., ECF No. 26-1 at 43.  Soon thereafter, Ryan and Pirrotti communicated about their prompt consent request for the EEOC and CHRO to release jurisdiction, as contemplated by the tolling agreement. Pirrotti Aff. ¶ 29; Ex. 8 to Pirrotti Aff., ECF No. 26-1 at 74.  In late June of 2022, the parties jointly submitted requests to the EEOC and CHRO for an immediate release of jurisdiction, and Ryan specifically represented that "[t]he Respondent" consented to the immediate release of jurisdiction. Pirrotti Aff. ¶ 32; Ex. 9 to Pirrotti Aff., ECF No. 26-1 at 79; Ex. 10 to Pirrotti Aff., ECF No. 26-1 at 81; Ryan Aff. ¶ 8.  The EEOC and CHRO subsequently released jurisdiction.  Compl. ¶ 16.

## B.  Legal Standard

### 1.  *Federal Rule of Civil Procedure 12(d)*

Federal Rule of Civil Procedure 12(d) provides that, if on a motion brought under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  The Rule further provides that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  Here, as noted above, the Court notified the parties of its intent to convert

Defendants' 12(b)(6) motion based on failure to exhaust administrative remedies to a motion for summary judgment under Rule 12(d), and allowed the parties an opportunity to submit additional briefing and factual material pertinent to the motion.

### 2. *Federal Rule of Civil Procedure 56*

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Then the non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and

must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

### 3. Exhaustion Under Title VII

Before initiating a Title VII action in federal court, "an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency.'" *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (quoting *Williams v. N.Y.C. Hous. Auth.,* 458 F.3d 67, 69 (2d Cir. 2006) (per curiam)). The administrative complaint filed with the EEOC or equivalent state agency "serves to notify the charged party of the alleged violation and also brings the party before the [agency], making possible effectuation of [Title VII's] primary goal of securing voluntary compliance with its mandates." *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation and internal quotation marks omitted). *See also Maturo v. Nat'l Graphics, Inc.*, 722 F. Supp. 916, 924 (D. Conn. 1989) ("The purpose of this exhaustion requirement is to provide notice to those alleged to have committed the violations and to provide an opportunity for the parties to comply voluntarily with the requirements of Title VII."). Accordingly, an important piece of the administrative exhaustion requirement is that the complaint to the administrative agency must name the defendant. *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citing 42 U.S.C. § 2000e–5(e)); *accord Williams v. Quebecor World Infiniti Graphics, Inc.*, No. 3:03-CV-2200 (PCD), 2007 WL 926901, at *2 (D. Conn. Mar. 23, 2007). Indeed, "Title VII claims can be subject to dismissal for failing to exhaust administrative remedies where a plaintiff failed to name a later-sued defendant in the EEOC complaint." *Dunbar v. Omnicom Grp., Inc.*, No. 3:19-CV-00956 (KAD), 2021 WL 633732, at *5 (D. Conn. Feb. 18, 2021) (citing *Vital*, 168 F.3d at 620).

The U.S. Supreme Court has clarified, however, that the exhaustion requirement is a mandatory claims processing rule and not a "jurisdictional prescription delineating the adjudicatory authority" of a federal court. *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019); *accord Dunbar*, 2021 WL 633732, at *5. Moreover, the Second Circuit has "taken a flexible stance in interpreting Title VII's procedural provisions . . . so as not to frustrate Title VII's remedial goals." *Johnson*, 931 F.2d at 209 (quoting *Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752, 754 (2d Cir. 1976)).

### 4.  Exhaustion Under CFEPA

Like Title VII, the CFEPA also imposes an administrative exhaustion requirement. Specifically, CFEPA claims "must initially go through the CHRO, and may not be sued upon until the CHRO grants a release of jurisdiction." *Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 63 (2d Cir. 2014) (citing Conn. Gen. Stat. § 46a-82 and *Sullivan v. Bd. of Police Comm'rs of City of Waterbury*, 196 Conn. 208, 215–17 (1985)). The Connecticut Supreme Court has characterized the CFEPA's administrative requirement as jurisdictional in nature. *Sullivan*, 196 Conn. at 217–18 (holding that a plaintiff's failure to exhaust his administrative remedies "forecloses his access to judicial relief, because it deprived the trial court of jurisdiction to hear his complaint"); *see also Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 (D. Conn. 2010) (noting that courts in this District have dismissed CFEPA claims for lack of subject matter jurisdiction where the plaintiff failed to administratively exhaust their claims).

### 5.  Identity of Interest Exception

In cases involving the incorrect naming of a party at the administrative complaint level, the Second Circuit and Connecticut Appellate Court have recognized an "identity of interest" exception to the exhaustion requirement. In the Title VII context, an action can proceed under this

13

exception against a party that was not named in the administrative complaint "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative [complaint]." *Johnson*, 931 F.2d at 209.  It is the plaintiff's burden to prove that the identity of interest exception applies.  *Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 214 (N.D.N.Y. 2013).

In considering whether there is an identity of interest between the party named in the administrative complaint and the unnamed, later-sued defendant, the district court considers various factors.  This test is "not a mechanical one, and no single factor is dispositive." *Zustovich v. Harvard Maintenance, Inc.*, No. 08 Civ. 6856 (HB), 2009 WL 735062, at *8 (S.D.N.Y. Mar. 20, 2009); *accord Husnay v. Enviromaster Int'l Corp.*, 275 F. Supp. 2d 265, 267 (N.D.N.Y. 2003). The Second Circuit has identified four relevant factors:  (1) "whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the [administrative] complaint," (2) whether the interests of the party named in the administrative complaint "are so similar as the unnamed party's that," for compliance purposes, "it would be unnecessary to include the unnamed party in the [administrative] proceedings," (3) whether the unnamed party's absence from the administrative proceedings "resulted in actual prejudice to the interests of the unnamed party," and (4) "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Johnson*, 931 F.2d at 209–10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)).

In addition to those four factors, several district courts in this Circuit have implied a fifth factor into the identity of interest test, specifically, whether the unnamed party "is named in the body of the charges as having played a role in the discrimination." *Zustovich*, 2009 WL 735062, at *8 (collecting cases).  Other district courts in this Circuit have considered this factor, which

turns on the unnamed party's actual notice of the allegations of the administrative complaint, as part of the third factor regarding the prejudice suffered by the unnamed party due to its absence from the administrative proceeding. *See Tarr v. Credit Suisse Asset Mgmt., Inc.*, 958 F. Supp. 785, 795 (E.D.N.Y. 1997); *Senecal*, 976 F. Supp. 2d at 226.

Finally, most district courts have considered whether a plaintiff was represented by counsel in the administrative proceeding to be relevant to the identity of interest test, although those courts disagree over whether the fact that a plaintiff was represented by counsel in the administrative proceeding should carry dispositive weight. *See Consolmagno v. Hosp. of St. Raphael*, No. 3:11-CV-109 (PCD), 2011 WL 4804774, at *7 n.14 (D. Conn. Oct. 11, 2011) (collecting cases and recognizing the disagreement).

The Connecticut Appellate Court has adopted the Second Circuit's identity of interest exception to the administrative exhaustion requirement for CFEPA claims. *Malasky v. Metal Prods. Corp.*, 44 Conn. App. 446, 455–56 (1997) (applying *Maturo*, 722 F. Supp. at 925).

C. Discussion

The Court finds that the identity of interest exception applies here and, on balance, the relative weight of the factors counsels in favor of finding Plaintiff's Title VII and CFEPA claims administratively exhausted despite that Plaintiff did not name the Town in the administrative complaint. As explained further below, the Town and the EHFD acted practically as a single entity during the parties' attempt to mediate the case and during the administrative proceeding. The purposes of the exhaustion requirement—notifying the employer of the dispute and affording the parties an opportunity for early resolution of the dispute—are served by finding identity in the Town's and the EHFD's interests here. *See Vital*, 168 F.3d at 619; *Maturo*, 722 F. Supp. at 924. While Plaintiff did not proceed *pro se* at the administrative agency stage—and in fact was

represented at the CHRO proceeding by the same experienced employment discrimination counsel who represents her in this action—the Court does not find it dispositive under these circumstances.

### 1. The Four-Factor Test

The first factor, "whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the [administrative] complaint," *Johnson*, 931 F.2d at 209, weighs against finding the identity of interest exception satisfied because Plaintiff's counsel should have known to name the Town in the administrative complaint. Plaintiff appears to have understood that the Town played some role in the allegedly discriminatory and retaliatory conduct against her or had a certain degree of supervisory control over the EHFD and, thus, the Town should have been named as a respondent before the CHRO. *See Johnson*, 931 F.2d at 210 ("There is no question that [the plaintiff] was able to ascertain the role of the [the defendant] and could have named, if he wished to, the [defendant] in the agency complaints."); *Consolmagno*, 2011 WL 4804774, at *7. Indeed, Plaintiff acknowledges that there is no reason she could not have named the Town, rather than or in addition to the EHFD, in the administrative complaint.[3] ECF No. 26 at 24. Given the wealth of authority from this District dismissing claims against municipal departments because they lack the capacity to be sued, as discussed below, and given that Plaintiff has at all times been represented by a law firm that touts its experience in employment

---

[3] Plaintiff notes that, after the Town filed its motion to dismiss, she filed a new complaint with the EEOC and CHRO against the Town. ECF No. 26 at 30 n.2. In reply, the Town argues that, if Plaintiff truly believed the identity of interest exception would save her case, there would have been no reason for her to file a new CHRO complaint naming the Town. The Town does not explain, however, why the pendency of the new administrative complaint should foreclose Plaintiff from invoking the identity of interest exception with respect to the present action. Indeed, the possibility that a plaintiff who mistakenly omits a party at the administrative proceeding could be entirely deprived of any opportunity for relief against that party is the underlying purpose of the identity of interest exception. *See Johnson*, 931 F.2d at 209 (adopting a "flexible approach" to Title VII's procedural requirements in light of the "vagaries" of that statute). In its supplemental brief, the Town contends that the new administrative complaint cannot be construed as an alternative legal argument to the identity of interest argument Plaintiff is pursuing here, ECF No. 56 at 4, but the Town's argument on this issue takes aim at the prudence of Plaintiff's counsel's litigation strategy rather than the legal viability of the claims raised in the present action.

discrimination law,[4] the Court finds it troubling that Plaintiff's counsel did not name the Town in her administrative complaint.  Plaintiff's counsel's basic oversight could have been fatal to Plaintiff's claims.

The second factor, however, weighs strongly in favor of finding the identity of interest exception satisfied.  That factor considers whether the interests of the party named in the administrative complaint "are so similar as the unnamed party's that," for compliance purposes, "it would be unnecessary to include the unnamed party in the [administrative] proceedings." *Johnson*, 931 F.2d at 209–10.  *See also Innes v. Cnty. of Warren*, No. 1:22-CV-00641 (BKS/TWD), 2023 WL 3601237, at *6 (N.D.N.Y. May 23, 2023) (explaining that the second factor "is designed to measure whether the unnamed party's interests were represented adequately at the administrative proceeding" (citations and internal quotation marks omitted)).  As explained below, a municipal department such as the EHFD is "a sub-unit or agency of the municipal government through which the municipality fulfills" its various functions authorized by Connecticut law.  *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 163–64 (D. Conn. 2005).  A municipal department does not constitute "a legal entity separate and apart from the municipality they serve," *Weitz v. Greenwich Police Dep't*, No. CV040200464S, 2005 WL 375302, at *2 (Conn. Super. Ct. Jan. 10, 2005), and thus the EHFD could not have any potential liability separate and

---

[4] For example, Ryan attested that, based on his familiarity with Pirrotti's law firm, he believes that it is "among the preeminent plaintiff-side employment law firms in" Connecticut.  Ryan Aff. ¶ 3.  Moreover, the opening page of the law firm's website touts its attorneys as being "Leading Advocates for Employees' Rights and Workplace Fairness." *Garrison, Levin-Epstein, Fitzgerald & Pirrotti, P.C.*, garrisonlaw.com (last visited August 14, 2023).  In addition, Pirrotti's biography represents that she "is well versed in all aspects of employment law" and that she "was named by Best Lawyers of America as its 2023 'Lawyer of the Year' for Employment Law-Individuals in New Haven, Connecticut and received that same honor in 2020."  *Nina T. Pirrotti*, garrisonlaw.com/about-the-firm/nina-t-pirrotti/ (last visited August 14, 2023).  The Court takes judicial notice of the fact that the law firm's website contains these statements, though it makes no comment on the truth of the matters described therein.  *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (explaining that "a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination") (cleaned up); Fed. R. Evid. 201.

apart from the Town's potential liability.  For that reason, the EHFD's interests are identical to those of the Town itself.  *See Wood v. Pittsford Cent. Sch. Dist.*, No. 03-CV-6541T, 2005 WL 43773, at *3 (W.D.N.Y. Jan. 10, 2005) (finding a "sufficiently strong" identity of interest between a municipal board of education and a school district).  Accordingly, this factor weighs strongly in favor of finding the identity of interest exception satisfied.

The third factor, whether the unnamed party's absence from the administrative proceedings "resulted in actual prejudice to the interests of the unnamed party," also weighs strongly in favor of finding the identity of interest exception satisfied.  *Johnson*, 931 F.2d at 210.  As part of this factor, courts have reasoned that "a plaintiff's failure to name or include a party in the agency complaint does not prejudice that party where it had notice of the claims against it and an opportunity to intervene."  *Tarr*, 958 F. Supp. at 795 (citing *Martin v. Purolator Courier*, No. 94 CV 1004(FB), 1996 WL 429016, at *6 (E.D.N.Y.1996)); *see also Senecal*, 976 F. Supp. 2d at 226–27 (reasoning that the unnamed defendant had actual notice of the administrative proceeding and did not show that it nevertheless suffered prejudice).  Relatedly, courts have found shared legal representation between the unnamed defendant and the party named in the administrative complaint relevant to the issues of notice and prejudice.  *See Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 650 (S.D.N.Y. 1994) (noting that the three entities were all represented by the same counsel); *Kelber v. Forest Elec. Corp.*, 799 F. Supp. 326, 331 n.4 (S.D.N.Y. 1992) (finding that an unnamed company had adequate notice of the plaintiff's administrative complaint because it shared a legal department with the company named in the administrative complaint); *Wood*, 2005 WL 43773, at *3.

The Town devotes no briefing to the issue of prejudice, likely because it did not suffer any prejudice due to its absence from the administrative proceeding.  To begin, the Town had actual

notice of Plaintiff's gender discrimination and retaliation claims and even attempted an early resolution of those claims by way of private mediation. Those facts weigh in favor of finding the exception satisfied because they show that the primary purposes of the administrative exhaustion requirement—affording the defendant notice and an opportunity for early resolution of the claims—were satisfied. *See Frilando v. N.Y.C. Transit Auth.*, 463 F. Supp. 3d 501, 513 (S.D.N.Y. 2020) (reasoning that the administrative proceeding "did not result in any prejudice to the interests of [the unnamed defendants] as the [agency] did not make any further investigation or engage in attempts of conciliation between" the parties).

In addition, the Town and the EHFD acted through shared legal representation throughout the parties' pre-litigation history, which both reinforces the Town's notice of Plaintiff's claims and obviates any potential prejudice the Town might have suffered from being absent in the administrative proceedings. Ryan represented the Town when attempting to mediate Plaintiff's claims prior to her filing of the administrative complaint, represented the EHFD in the subsequent administrative proceedings, and now represents both the Town and the EHFD in the present litigation. Specifically, Ryan entered the tolling agreement on behalf of the Town agreeing to immediately consent to the administrative release of jurisdiction if the mediation failed and Plaintiff filed her administrative complaint, and he then indeed consented to the administrative release of jurisdiction on behalf of the EHFD. In other words, the Town agreed to the release of administrative jurisdiction by way of the tolling agreement, and the EHFD executed that agreement in the administrative proceeding—all of which occurred during Ryan's representation of both entities. Thus, the Town clearly had notice and a meaningful opportunity to avail itself of the administrative process, and this factor weighs strongly in favor of applying the identity of interest exception.

The fourth factor, "whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party," also weighs somewhat in favor of finding the identity of interest exception satisfied. *Johnson*, 931 F.2d at 210. The tolling agreement Ryan signed on behalf of the Town had attached and incorporated by reference Plaintiff's draft administrative complaint, in which Plaintiff named the EHFD as the respondent. By signing that agreement, Ryan bound the Town to accept Plaintiff's filing of the administrative complaint against the EHFD, an entity that had no independent legal existence, and to agree to immediately seek a release of the administrative jurisdiction, *on behalf of the Town*, with respect to that very same complaint. Although Ryan did not outright state that the Town's relationship with Plaintiff would occur through the EHFD, his conduct strongly implied as much. The weight of this factor is somewhat undermined by the fact that Plaintiff was represented by experienced employment discrimination counsel who, like Ryan, should have known when preparing the administrative complaint that the EHFD had no legal existence. *See Senecal*, 976 F. Supp. 2d at 228. On balance, however, this factor nevertheless weighs somewhat in favor of finding the identity of interest exception satisfied.

In sum, one factor weighs against finding the identity of interest exception satisfied, while three factors weigh in favor of finding the exception satisfied. Courts have often found such a balance of factors sufficient to satisfy the exception. *See Senecal*, 976 F. Supp. 2d at 229; *Lafferty v. Owens, Schine & Nicola, P.C.*, No. 3:09-CV-1045 (MRK), 2012 WL 162332, at *8 (D. Conn. Jan. 18, 2012).

### 2. *Plaintiff's Representation by Counsel*

The Town, however, contends that the identity of interest can never be satisfied where, as here, the plaintiff was represented by counsel in the administrative proceeding. As noted above,

there is disagreement among district courts in this Circuit regarding whether the fact that a plaintiff was represented by counsel in the administrative proceeding, on the one hand, should entirely foreclose the identity of interest exception, or, on the other hand, should be considered as another non-dispositive factor. *See Consolmagno*, 2011 WL 4804774, at *7 n.14.  When setting forth the four primary factors in *Johnson*, the Second Circuit reasoned that administrative complaints "generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements." *Johnson*, 931 F.2d at 209.  Some district courts have interpreted that language to mean that the identity of interest exception should apply *only* when the plaintiff was not represented by counsel in the administrative proceeding. *See, e.g.*, *Anderson*, 718 F. Supp. 2d at 274–75; *Peterson v. City of Hartford*, 80 F. Supp. 2d 21, 24 (D. Conn. 1999); *Dunbar*, 2021 WL 633732, at *8; *Joseph v. United Techs. Corp.*, No. 3:14-CV-424 (AWT), 2015 WL 851895, at *4 (D. Conn. Feb. 26, 2015).  Others have suggested that the identity of interest exception could apply when the plaintiff's counsel in the administrative proceeding was unfamiliar with Title VII but could not apply when counsel had such familiarity. *See Gagliardi v. Universal Outdoor Holdings, Inc.*, 137 F. Supp. 2d 374, 379 (S.D.N.Y. 2001); *Flower v. Mayfair Joint Venture*, No. 95 CIV. 1744 (DAB), 2000 WL 272187, at *6 (S.D.N.Y. Mar. 13, 2000); *Senecal*, 976 F. Supp. 2d at 216.

By contrast, other district courts have considered whether the plaintiff was represented by counsel in the administrative proceeding to be a non-dispositive factor in applying the identity of interest test. *See, e.g.*, *Consolmagno*, 2011 WL 4804774, at *7 n.14; *Williams*, 2007 WL 926901, at *3; *Senecal*, 976 F. Supp. 2d at 215–16; *Olvera-Morales v. Sterling Onions, Inc.*, 322 F. Supp. 2d 211, 217–18 (N.D.N.Y. 2004); *Wood*, 2005 WL 43773, at *4.  Those courts generally reason that the Second Circuit "has not imposed any such precondition for utilizing the identity of interest test," *Wood*, 2005 WL 43773, at *4, and that a proper balance of the various goals of the

administrative exhaustion requirement "is best achieved by a case-by-case evaluation of the circumstances" in light of all the relevant factors, *Olvera-Morales*, 322 F. Supp. 2d at 217–18.

The Court agrees with the approach of the latter group of its sister courts and, in the absence of clear instruction from the Second Circuit, will not categorically foreclose Plaintiff from invoking the identity of interest exception simply because she was represented by counsel in the administrative proceeding. While the principles underlying the identity of interest exception apply most forcefully when a plaintiff was unrepresented at the administrative proceeding, the Second Circuit requires consideration of a number of factors in deciding whether the test is met, only one of which is whether the plaintiff was represented in front of the agency. The Second Circuit has not given this factor dispositive weight, and the Court deems it inappropriate to do so here.

Moreover, the purposes of the administrative exhaustion requirement are served by invoking the identity of interest exception here. At all times before filing the present motion, the Town has acted as if it and the EHFD were one and the same. To be sure, the Court questions Plaintiff's counsel's failure to name the proper party in the administrative complaint or to clarify the client for whom Ryan was acting at various points. But foreclosing Plaintiff from benefitting from the identity of interest exception here, where the purposes of the exhaustion requirement are satisfied, would torture the exception as articulated by the Second Circuit and frustrate Title VII's broader remedial goals.

Accordingly, because the facts of the present record demonstrate that there is an identity of interest between the EHFD, the party named in the administrative complaint, and the Town, the party unnamed in the administrative complaint but named in the present action, the Court cannot conclude that Plaintiff's Title VII claims are unexhausted.

22

### 3. *Plaintiff's CFEPA Claims*[5]

The Court is not compelled to reach a different outcome with respect to Plaintiff's CFEPA claims. As noted above, the Connecticut Appellate Court has adopted the identity of interest exception to the administrative exhaustion requirement for CFEPA claims. *Malasky*, 44 Conn. App. at 455–56. In *Malasky*, the Connecticut Appellate Court found the exception satisfied where the unnamed defendant had actual notice of the administrative complaint, suffered no prejudice from being absent from the administrative proceeding, and had substantially identical interests as the party named in the administrative complaint. *Id.* The court also found that the plaintiff's lack of representation by counsel in the administrative proceeding was a relevant factor. *Id.* But the Connecticut Appellate Court did not specifically require a plaintiff to have been unrepresented at the administrative proceeding in order to invoke the identity of interest exception. Since *Malasky*, neither that court nor the Connecticut Supreme Court have spoken directly on this issue.

Other courts in this District considering the identity of interest exception with respect to CFEPA claims have interpreted *Malasky* as foreclosing the exception if the plaintiff was represented by counsel in the administrative proceeding. *Robinson*, 578 F. Supp. 2d at 390; *Dunbar*, 2021 WL 633732, at *8. This Court disagrees with the reasoning of those courts. To begin, *Malasky* observed that the plaintiff was not represented by counsel in the administrative proceeding, but the opinion did not employ any language suggesting that it was a necessary or determinative fact. In addition, because *Malasky* simply adopted the federal identity of interest test, it would be incongruent to require different outcomes with respect to Plaintiff's CFEPA and

---

[5] The Town contends that, because courts have held that the CFEPA's exhaustion requirement is jurisdictional in nature, dismissal of Plaintiff's CFEPA claims is proper under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the reasons set forth here, however, the Court concludes that the identity of interest exception is satisfied, and, thus, that Plaintiff has properly exhausted her Title VII and CFEPA claims against the Town. Moreover, the Court has original jurisdiction over Plaintiff's Title VII claims and supplemental jurisdiction over her CFEPA claims pursuant to 28 U.S.C. § 1367(a). Accordingly, the Court has subject matter jurisdiction over Plaintiff's CFEPA claims.

Title VII claims.  Absent express direction from the Second Circuit or the Connecticut Appellate Court, the Court finds the fact that Plaintiff was represented by counsel in the administrative proceeding to be a relevant but non-determinative factor.  Notwithstanding that fact, for the same reasons the Court finds Plaintiff's Title VII claims exhausted, it also finds that her CFEPA claims exhausted.  The Town's motion for summary judgment on the ground of failure to administratively exhaust is thus denied.

### III.   MOTION TO DISMISS

#### A.  Legal Standard

Defendants have also moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## B. The EHFD's Capacity to Be Sued

First, the Court dismisses all of Plaintiff's claims against the EHFD, as it is not a legal entity with the capacity to be sued.

Federal Rule of Civil Procedure 17 governs the capacity of parties who may sue and be sued. Specifically, Rule 17(b)(3) provides, in relevant part, that the capacity of any litigant that is not an individual or a corporation is determined by "the law of the state where the court is located." Under Connecticut law, capacity to sue turns on whether the litigant has "an actual legal existence." *Isaac v. Mount Sinai Hosp.*, 3 Conn. App. 598, 600 (1985) (citation and internal quotation marks omitted). Relevant here, a municipality—defined as "any town, city or borough, consolidated town and city or consolidated town and borough"—is an entity with legal existence that has the capacity to sue and be sued. Conn. Gen. Stat. § 7-148(a), (c)(1); *Weitz*, 2005 WL 375302, at *2. Connecticut law also bestows on a municipality the power to create a fire department, *see* Conn. Gen. Stat. § 7-148(c)(4)(B), but there is no provision of Connecticut law providing that a fire department or any other municipal department "constitutes a legal entity separate and apart from the municipality they serve, or that they have the power to sue and be sued," *Weitz*, 2005 WL 375302, at *2. *Accord Eloi v. Gagnon*, No. CV074030795, 2007 WL 4686489, at *2 (Conn. Super. Ct. Dec. 3, 2007); *Levine v. Fairfield Fire Dep't*, No. X01CV890146670S, 1999 WL 241734, at *3 (Conn. Super. Ct. Apr. 9, 1999).

A number of courts in this District have applied those principles to dismiss claims against municipal departments.  *E.g.*, *McDonald v. Stamford Police Dep't*, No. 3:21-CV-00723 (KAD), 2022 WL 1471249, at *3 (D. Conn. May 10, 2022), *aff'd sub nom. McDonald v. Molina*, No. 22-1261-CV, 2023 WL 2229365 (2d Cir. Feb. 27, 2023) (summary order); *Li v. Connecticut*, No. 3:22-CV-00996 (VAB), 2022 WL 3347220, at *13 (D. Conn. Aug. 11, 2022); *Alexander v. U.S. Postal Serv.*, No. 3:19-CV-1295 (VLB), 2020 WL 4735269, at *3 (D. Conn. Aug. 14, 2020); *Rose v. City of Waterbury*, No. 3:12-CV-291 (VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013).

In opposing the EHFD's argument that it lacks capacity to be sued under Connecticut law, Plaintiff points to the Town's charter,[6] which Plaintiff contends renders the EHFD amenable to suit.  Specifically, Chapter IX, Section 5 provides:

> No action or proceeding, civil or criminal, *pending on the effective date of this Charter* brought by or against the Town or any Commission, Board, Department or Office thereof, shall be affected or abated by the adoption of this Charter or by anything herein contained; but all such actions or proceedings may be contained notwithstanding that functions, powers and duties of any Commission, Board, Department or Office party thereto may, by or under this Charter, be assigned or transferred to another Commission, Board, Department, or Office, but in that event the same may be prosecuted or defended by the head of the Commission, Board, Department or Office to which such functions, powers and duties have been assigned or transferred by or under this Charter.

ECF No. 26-2 at 2 (emphasis added).  Plaintiff cannot claim refuge in this provision of the charter for two reasons.  First, while this provision of the charter contemplates that a municipal department could have the capacity to be sued, it does not expressly *confer* any such capacity on the EHFD or municipal departments generally.  Plaintiff has not pointed to any specific language

---

[6] The Court takes judicial notice of the Town's charter.  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."); *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 337 n.4 (E.D.N.Y. 2010) (considering a motion to dismiss and taking judicial notice of the provisions of a municipality's regulations pursuant to Federal Rule of Evidence 201).

in it that she believes effectuates a delegation of authority or capacity, nor does she identify a case interpreting the Town's charter as delegating its capacity to sue and be sued to a municipal department. Second, this provision appears to grandfather in only actions "pending on the effective date of this Charter," so that any such action remains unaffected by the passage of the charter or by the assignment or transfer of the functions, powers, or duties of one municipal department to another. Plaintiff does not contend that this action was pending on the effective date of the charter.

For these reasons, all of Plaintiff's claims against the EHFD must be dismissed, and Defendants' motion to dismiss is thus granted in that respect.[7]

### C. Count Three: Equal Protection Claim

Next, the Town moves to dismiss Count Three of the complaint, contending that Plaintiff fails to state a plausible equal protection claim implicating municipal liability under § 1983.

#### 1. Legal Standard

Together, 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment protect public employees from various forms of discrimination, including disparate treatment on the basis of gender. *See Littlejohn*, 795 F.3d at 320; *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), a town or municipality can be directly liable for violations of § 1983 committed by its employees in certain circumstances. In each circumstance, a plaintiff "must demonstrate that

---

[7] Even if capacity to sue and be sued was conferred by the Town's charter or some other source of law, Plaintiff's § 1983 claim under the Equal Protection Clause, Count Three, would have to be dismissed against the EHFD as a matter of federal law. A number of courts in this District have specifically dismissed § 1983 claims against municipal departments because, although a municipality is a "person" within the meaning of that statute, a municipal department is not, and thus a plaintiff cannot state a § 1983 claim against a municipal department. *E.g.*, *Nicholson*, 356 F. Supp. 2d at 163–64 (explaining that a municipal police department "is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function," not an "independent legal entity" under § 1983); *McDonald*, 2022 WL 1471249, at *3; *Holley v. Middletown Police Dep't*, No. 3:20-CV-1664 (SRU), 2021 WL 2413398, at *4 (D. Conn. June 14, 2021); *Rose*, 2013 WL 1187049, at *9.

through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (cleaned up) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997), and *Roe v. City of Waterbury*, 542 F.3d 31, 40 (2d Cir. 2008)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404.

The Second Circuit has distilled the requirements of a *Monell* claim into three elements, holding that a plaintiff must plead: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). A plaintiff may satisfy the policy or custom element by alleging, among other theories, "a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers," or "actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights." *Gomez v. City of Norwalk*, No. 15-CV-1434 (MPS), 2017 WL 3033322, at *3 (D. Conn. July 17, 2017).

## 2. *Discussion*

Plaintiff raises two theories of equal protection violations by the Town under *Monell*: first, that there was a widespread custom or practice of gender discrimination in the EHFD; and second, that Marcarelli was a final policymaker whose decisions constituted gender discrimination. For the following reasons, the Court holds that the complaint does not plausibly state an equal protection claim based on the custom or practice theory, but that it plausibly states an equal protection claim based on the final policymaker theory. Accordingly, the Town's motion to dismiss is granted in part and denied in part with respect to Plaintiff's equal protection claim in Count Three.

a. Custom or Practice

First, the Court finds Plaintiff's allegations of a widespread custom or practice of gender discrimination in the EHFD insufficient to state a *Monell* claim.  To show a custom or practice, a plaintiff "need not identify an express rule or regulation."  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)).  Rather, a plaintiff "can show that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials."  *Littlejohn*, 795 F.3d at 315 (quoting *Patterson*, 375 F.3d at 226); *accord Brown*, 520 U.S. at 404 (explaining that a custom may subject a municipality to liability "on the theory that the relevant practice is so widespread as to have the force of law").  "To survive a motion to dismiss, a plaintiff 'cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'"  *Chase v. Nodine's Smokehouse, Inc.*, 360 F. Supp. 3d 98, 110 (D. Conn. 2019) (quoting *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012)).

Plaintiff alleges several instances of gender discrimination in the EHFD, but none of these instances, even if proven, plausibly demonstrate a custom or practice of gender discrimination within the EHFD that effectively has the force of law.  To begin, Plaintiff points to the events in the early 1990s that preceded her hiring by the EHFD, in which the then-Chairman of the Board of Fire Commissioners attempted to obstruct her application out of his belief that women should not be firefighters.  Compl. ¶ 21.  Even accepting the truth of Plaintiff's allegations, this incident, though distasteful, does not show a persistent or widespread custom of gender discrimination in

29

the EHFD, given that nearly thirty years passed between the incident and Plaintiff's application for the Assistant Chief position.  *See Lupinacci v. Pizighelli*, 588 F. Supp. 2d 242, 252 (D. Conn. 2008) (holding that certain events were "so remote in time from the events at issue here that no reasonable jury could conclude that they reflected the municipality's policy at the time of" the relevant events); *Plair v. City of New York*, 789 F. Supp. 2d 459, 466 (S.D.N.Y. 2011) (finding two instances of misconduct occurring "several years" before the relevant events insufficient to plausibly allege a municipal policy or custom, given "the passage of time and the installation of a new" agency head); *Neira v. Cnty. of Nassau*, No. 13-CV-7271 (JMA) (AYS), 2022 WL 4586045, at *12 (E.D.N.Y. Sept. 29, 2022) (finding certain events occurring years before the relevant incident "too attenuated to establish *Monell* liability").  At oral argument, Plaintiff argued that those events evince the discriminatory animus that has infected her entire tenure of employment with the EHFD; but the complaint does not allege anything between the early 1990s and the time period when she applied for the Assistant Chief position, and thus there are no allegations that suggest a continuous pattern of gender discrimination throughout all those years.

In addition, Plaintiff points to her allegation that, as of June of 2022, only three employees out of the fifty-two employees of the EHFD were women.  Compl. ¶ 31.  Although statistical evidence of gender disparity can be relevant to the existence of a policy or custom, *see Sorlucco*, 971 F.2d at 872, this allegation, accepted as true, does not demonstrate a widespread policy or custom because it is devoid of any further factual information.  As one court in this Circuit held, allegations that a municipal department "refused to hire" women—absent details regarding who actually applied for employment with the department—are too conclusory to demonstrate a policy or custom of discrimination.  *Arnold v. Town of Camillus, N.Y.*, No. 5:20-CV-1364 (MAD/ML), 2023 WL 2456059, at *7 (N.D.N.Y. Mar. 9, 2023).

Next, Plaintiff alleges that, when a male firefighter and a female firefighter committed "comparable infractions," the male firefighter's infraction was "handled informally" with Marcarelli, whereas the female firefighter was required to appear before the Board of Fire Commissioners and the Town's labor attorney. Compl. ¶ 74. But Plaintiff does not identify the relevant "infractions," and, thus, her allegation that they were "comparable" is entirely conclusory. This threadbare suggestion that female firefighters were subject to greater scrutiny is insufficient to demonstrate a municipal policy or custom of gender discrimination. *See Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1077 (2d Cir. 2021) (affirming dismissal of conclusory allegations that a municipal agency imposed less severe sanctions on non-African American employees who committed similar conduct as African American employees); *Arnold*, 2023 WL 2456059, at *8 (finding allegations that female employees were "subjected to greater scrutiny and more severe discipline" than male employees insufficient to support a *Monell* claim); *D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cen. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005) (dismissing "wholly conclusory" allegations of selective treatment equal protection claim).

Plaintiff's remaining allegations are even less probative of a custom or practice of gender discrimination. For example, the isolated instance when Marcarelli used a derogatory term to refer to a woman not employed by the EHFD, and later apologized, Compl. ¶ 73, does not bear on any policy or custom of discriminatory practices within the EHFD. *See Buster v. City of Wallingford*, 557 F. Supp. 2d 294, 301 (D. Conn. 2008) (finding evidence of an employee's reputation for making "inappropriate remarks" insufficient to demonstrate a policy of discrimination). In addition, Plaintiff alleges that the EHFD refused to assign a partner to one transgender woman firefighter and that, when Plaintiff informed the Male Candidate that this violated the woman's union contract, he and Marcarelli disagreed. Compl. ¶ 71. But the relevance of these allegations

is unclear; the Court cannot infer that this incident demonstrates discrimination because Plaintiff alleges nothing about the EHFD's usual practice of assigning partners or whether the EHFD's decision not to assign a partner to this firefighter was disadvantageous or punitive.

Finally, Plaintiff points to the allegations surrounding the Assistant Chief application process as probative of a custom or practice of gender discrimination within the EHFD.  The plaintiff's own alleged experience of discrimination standing alone, however, is insufficient to demonstrate a widespread or persistent practice of gender discrimination under this theory.  *See Gerardi v. Huntington Union Free Sch. Dist.*, 124 F. Supp. 3d 206, 226 (E.D.N.Y. 2015) (holding that the plaintiff's account alone was insufficient to give rise to an inference of widespread or persistent discrimination).

Considering all these allegations together, Plaintiff has identified only a handful of instances of gender discrimination, and most of those instances do little to establish a practice or custom of gender discrimination because they are attenuated, isolated, and bereft of factual detail from which the Court could plausibly infer that it was a custom or practice of the Town to discriminate against women.  Importantly, municipal liability may be imposed under this theory of *Monell* liability only for "practices so *persistent and widespread* as to practically have the force of law."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis added); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).  A few isolated instances of misconduct are insufficient to plausibly allege a municipal policy or custom of discrimination.  *Cipolloni v. City of New York*, 758 F. App'x 76, 79 (2d Cir. 2018) (summary order).  Because Plaintiff's handful of isolated instances do not amount to a widespread or persistent practice or custom of gender discrimination, she cannot plausibly state a § 1983 claim against the Town under this theory.  Accordingly, the Town's motion to dismiss Count Three is granted with respect to this theory of liability.

b.  Final Policymaker's Decision

The Court next concludes, however, that Plaintiff has plausibly alleged a *Monell* claim for gender discrimination under the theory that Marcarelli was a final policymaker with respect to the decisions he made that prevented Plaintiff from being considered by the Board of Fire Commissioners for the Assistant Chief position.  Compl. ¶ 116.

The U.S. Supreme Court has held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," specifically, when those policymakers' "'acts or edicts may fairly be said to represent official policy.'"  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1996) (quoting *Monell*, 436 U.S. at 694).  In determining whether an individual official's decision may give rise to municipal liability, a federal court must determine whether the official has "final policymaking authority" in the relevant area of the municipality's functions.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (citing *Pembaur*, 475 U.S. at 482–83).  In other words, a plaintiff seeking to hold a municipality liable for the decision of an individual official must show (1) "that the official had final policymaking power," and (2) that the challenged decision was "within that official's area of policymaking authority."  *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (citing *Praprotnik*, 485 U.S. at 123).  "Whether the official in question possessed final policymaking authority is a legal question . . . which is to be answered on the basis of state law."  *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (citing, among others, *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997), and *Praprotnik*, 485 U.S. at 123).

Here, Plaintiff alleges that the final decision to hire the Male Candidate for the Assistant Chief position was made by the Board of Fire Commissioners, not Marcarelli.  Compl. ¶ 68.  Nevertheless, Plaintiff contends that Marcarelli had final policymaking authority with respect to several aspects of the application process and that he wielded that authority in a discriminatory

manner, the effect of which was that Plaintiff did not advance to the final interview round and therefore had no chance of being hired by the Board of Fire Commissioners.  For example, Marcarelli drafted a new job description for the Assistant Chief position that rendered the Male Candidate newly eligible for the position and downplayed the significance of Plaintiff's extensive supervisory experience.  Compl. ¶¶ 48–49.  In addition, Marcarelli allegedly removed the written exam component of the application process, even though Plaintiff had done well on prior written exams, and then "hand-picked" the interviewers for the oral exam, ensuring that the Male Candidate knew them personally and Plaintiff did not.  *Id.* ¶¶ 20, 24, 53–54.  Plaintiff contends that, due to these decisions by Marcarelli over which he had final policymaking authority, she was eliminated from the interview process before the final interview round with the Board of Fire Commissioners.  *Id.* ¶ 60.

Generally, the Second Circuit has allowed *Monell* claims when an official had full authority to make the challenged personnel decision, *see Roe*, 542 F.3d at 39–40, and has not allowed *Monell* claims when the final authority for the relevant personnel decision rested with a different individual than the one whose conduct is challenged, *see Boonmalert v. City of New York*, 721 F. App'x 29, 34 (2d Cir. 2018) (summary order).  But the present case is not as straightforward as either of those because, at this early stage, there is no clear source of state or municipal law identifying who had the final policymaking authority with respect to the specific decisions alleged to have been made by Marcarelli.  For example, the Town has not identified any source of law, or other evidence of which this Court may take judicial notice, providing that Marcarelli's draft of the Assistant Chief job description, elimination of the written exam, and selection of initial interviewers were reviewable by the Board of Fire Commissioners or some other municipal person or entity.  *See Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (holding that an individual's

decision was not a final policymaking decision in support of a *Monell* claim because another individual reviewed and overrode that decision).

Absent any such source of law, the Court is left with the allegations of the complaint, which allow a reasonable inference that Marcarelli wielded final decisionmaking power regarding the critical aspects of the application process that led to Plaintiff's elimination.   Importantly, the complaint alleges that Marcarelli *drafted* the job description, *eliminated* the written exam requirement, and *hand-picked* the interviewers.   Compl. ¶¶ 48, 53–54.[8]  To the extent further discovery reveals that those decisions were reviewable by the Board of Fire Commissioners, or to the extent that further research demonstrates that the authority to make those decisions was vested in the Board or some other person or entity, Plaintiff may not ultimately prevail on this theory of her *Monell* claim.   *See Pembaur*, 475 U.S. at 481–82 (explaining that the fact that a particular policymaking official "has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion").   At the pleading stage, however, the Court must draw all reasonable inferences in Plaintiff's favor, and the Court thus concludes that she has plausibly alleged that Marcarelli had the final policymaking authority with respect to the particular decisions that led to her elimination from the application process.  Accordingly, the Town's motion to dismiss Count Three is denied with respect to this theory of liability.

---

[8] By contrast, Plaintiff alleges that the decision to open the position to external candidates was made by the Board of Fire Commissioners—although Plaintiff alleges that this decision was based on false information Marcarelli supplied to the Board.  Compl. ¶¶ 50–51.  Plaintiff has not argued, however, that the Board of Fire Commissioners ratified any of Marcarelli's allegedly discriminatory decisions.  *See Praprotnik*, 485 U.S. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision was final.").

D.  Counts Four and Five: Retaliation

Finally, Plaintiff alleges that Defendants retaliated against her after she complained of gender discrimination.   For the reasons described below, Plaintiff's retaliation claims are dismissed.

### 1.  Legal Standard

Title VII prohibits an employer from retaliating against an employee because the employee has opposed any practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a); *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015).  "The objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice."  *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).  An employee "engages in a protected activity when he protests or opposes an employment practice that he reasonably believes, in good faith, violates the law."  *Joseph v. Marco Polo Network, Inc.*, No. 09 Civ. 1597 (DLC), 2010 WL 4513298, at *17 (S.D.N.Y. Nov. 10, 2010) (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006)).  An employee opposes discrimination by, for example, formally charging the employer with discrimination or informally complaining of discriminatory employment practices to management.  *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).  The CFEPA also prohibits an employer from retaliating against an employee because the employee has "opposed any discriminatory employment practice," Conn. Gen. Stat. § 46a-60(b)(4), and retaliation claims under the CFEPA are subject to the same analysis as retaliation claims under Title VII, *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) (citing *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002)).

At the pleading stage, a plaintiff need only allege a reduced *prima facie* case of retaliation. *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Littlejohn*, 795 F.3d at 316, for the proposition that the facts alleged in the complaint "need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation" (italicization added)). Specifically, for a retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that (1) the defendant "took an adverse employment action" against her, (2) "'because' [she] has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)); *accord Duplan*, 888 F.3d at 625.

To allege an adverse action for the purpose of a retaliation claim, a plaintiff must allege "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted); *accord Carr v. N.Y.C. Transit Auth.*, __ F.4th __, 2023 WL 5005655, at *5 (2d Cir. Aug. 7, 2023). The U.S. Supreme Court has explained that "Title VII's antiretaliation provision must be construed to cover a broad range of employer conduct," given the breadth of the statute. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011) (citing *White*, 548 U.S. at 68). That said, Title VII "'does not set forth a general civility code for the American workplace,'" and "'[p]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *White*, 548 U.S. at 68). Therefore, Title VII protects only against retaliation "that produces an injury or harm," and the "standard for judging harm must be objective." *White*, 548 U.S. at 67–68. In addition, a plaintiff must "plead but-for

causation, which requires 'that the adverse action would not have occurred in the absence of the retaliatory motive.'"  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) (quoting *Duplan*, 888 F.3d at 625); *see also Vega*, 801 F.3d at 90 (explaining that "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action").

### 2.  Discussion

The Court concludes that Plaintiff has not plausibly alleged an adverse employment action to support her retaliation claims.  To begin, Plaintiff alleges that, after her counsel sent the Town a letter claiming gender discrimination in the EHFD, Marcarelli "no longer addressed [her] unless it was absolutely essential."  Compl. ¶ 77.  Several district courts in this Circuit have held that ostracism, shunning, or being given the proverbial cold shoulder generally do not rise to the level of a materially adverse employment action.  *Rodas v. Town of Farmington*, 918 F. Supp. 2d 183, 191 (W.D.N.Y. 2013); *McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 387 (W.D.N.Y. 2013); *Santiesteban v. Nestle Waters N. Am., Inc.*, 61 F. Supp. 3d 221, 242 (E.D.N.Y. 2014).

Next, Plaintiff identifies two instances when Marcarelli left her out of important decisions regarding subordinate firefighters on her crew and effectively undermined her authority:  (1) when one of her firefighters was sick and Plaintiff informed Marcarelli that she did not believe he was under the influence of any substances, Marcarelli nevertheless asked the firefighter to submit to a drug test without informing Plaintiff, Compl. ¶¶ 80–81; and (2) Marcarelli talked with a firefighter on Plaintiff's crew about reassigning him to a different crew without consulting with Plaintiff as he ordinarily would have done, *id.* ¶¶ 83–84.  But this is akin to being left out of meetings, which generally does not amount to materially adverse employment actions.  *See McCullough*, 942 F. Supp. 2d at 387 (reasoning that "being left out of meetings does not amount to an adverse action, absent a showing that some additional negative consequences flowed from that exclusion"); *Rodas*,

918 F. Supp. 2d at 191 (reasoning that "the exclusion of an employee from non-essential office functions" did not rise to the level of a materially adverse employment action); *Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 154 (S.D.N.Y. 2011) (holding that evidence that a supervisor took away responsibilities and excluded the plaintiff from decisions was insufficient to qualify as a materially adverse employment action at summary judgment).

Plaintiff also alleges that the Town, through Ryan, investigated how she was paid for certification classes. Compl. ¶ 92. This allegation is not a materially adverse employment action, as "increased scrutiny or general monitoring does not rise to the level of an adverse employment action." *Davis v. Verizon Wireless*, 389 F. Supp. 2d 458, 478 (W.D.N.Y. 2005) (collecting cases); *see also Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (same).

Finally, Plaintiff alleges that Ryan falsely accused her partner, Vasilko, of unethical conduct. Compl. ¶ 88. Actions taken against a third party, such as the employee's "close family member," can give rise to a materially adverse employment action. *Thompson*, 562 U.S. at 174–75 ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired."). But Plaintiff does not plausibly allege an action taken by the Town against Vasilko that rises to the level of dissuading a reasonable employee in Plaintiff's position from engaging in a protected activity. Importantly, Ryan's accusation was later acknowledged to be false, and Plaintiff has not alleged that it had any consequence on Vasilko's employment. *See Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 300 (E.D.N.Y. 2005) (holding that a reprimand that did not have a tangible effect on employment could not form basis of retaliation claim).

39

In sum, none of the instances alleged by Plaintiff produced an actionable "injury or harm" as required by Title VII's and the CFEPA's antiretaliation provisions.[9] *White*, 548 U.S. at 67. Accordingly, Plaintiff has not plausibly alleged a materially adverse employment action, and her retaliation claims under Title VII and the CFEPA must be dismissed. The Town's motion to dismiss is thus granted with respect to Counts Four and Five.

## IV.     CONCLUSION

For the reasons described above, Defendants' motion to dismiss, ECF No. 14, is GRANTED IN PART and DENIED IN PART.  All claims against the East Haven Fire Department are DISMISSED, and the Clerk is directed to terminate that Defendant.  Plaintiff's equal protection claim against the Town in Count Three based on the theory of a municipal policy or custom of gender discrimination is DISMISSED.  In addition, Plaintiff's retaliation claims in Counts Four and Five are DISMISSED.  Thus, Defendants' motion to dismiss is GRANTED to that extent.

The motion is DENIED in all other respects.  The following claims remain: Plaintiff's sex discrimination claims against the Town raised in Counts One and Two; and her equal protection claim against the Town raised in Count Three based on the theory of Marcarelli's exercise of final policymaking authority.

---

[9] In determining whether conduct amounts to an adverse employment action, courts often consider the alleged instances of retaliation "both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)). Indeed, the Second Circuit recently noted that allegedly retaliatory actions generally should be "taken in the aggregate" to determine whether they are materially adverse. *Carr*, 2023 WL 5005655, at *6. Here, however, Plaintiff did not argue in her briefing that her alleged instances of retaliation were sufficient, when considered in the aggregate, to amount to a materially adverse employment action. Defendants therefore did not have a meaningful opportunity to address this issue. Plaintiff raised this argument for the first time at oral argument, but the Court need not consider an argument raised for the first time at oral argument. *Kosachuk v. Selective Advisors Grp., LLC*, 827 F. App'x 58, 62 (2d Cir. 2020) (summary order) (collecting cases for the proposition that the appellant "waived (or certainly forfeited)" an argument raised in oral argument by failing to raise it in his brief); *Conservation L. Found., Inc. v. Gulf Oil Ltd. P'ship*, No. 3:21-CV-00932 (SVN), 2022 WL 4585549, at *7 n.4 (D. Conn. Sept. 29, 2022) (declining to consider an argument raised for the first time at oral argument). Because Plaintiff did not expressly raise this theory of retaliation, and because the Court will allow Plaintiff leave to amend her complaint, the Court does not address whether the alleged retaliatory acts, if considered in the aggregate, presently suffice to state a retaliation claim.

Should Plaintiff seek to amend her complaint to remedy the deficiencies addressed in this order, she is granted leave to file an amended complaint by August 28, 2023.  If Plaintiff does not file an amended complaint by that date, the Town shall file an answer to the complaint with respect to the remaining claims by September 5, 2023.

**SO ORDERED** at Hartford, Connecticut, this 14th day of August, 2023.

      */s/ Sarala V. Nagala*
      SARALA V. NAGALA
      UNITED STATES DISTRICT JUDGE